UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ANGELA HEYNE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-cv-305-JD-CAN |
| | ) | |
| NICK'S AMERICAN PANCAKE & | ) | |
| CAFÉ, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On July 8, 2015, two of Plaintiffs' motions—their Motion for and Accompanying

Memorandum of Law in Support of an Award of Supplemental Attorneys' Fees and Expenses

Pursuant to 42 U.S.C. § 1988 [Doc. No. 213], filed on March 5, 2015, and their Verified Motion

for Contempt [Doc. No. 223], filed on June 30, 2015—were referred to the undersigned for a

report and recommendation pursuant to 28 U.S.C. § 636 (b)(1)(c). As of July 29, 2015, neither

Defendants nor Judgement Creditor, Z & K Pancake House, co-owned by Zoi Kladis and Nick

Kladis, had responded to the instant motions despite having more than the fourteen days allowed

under N.D. Ind. L.R. 7-1(d)(2)(A) to do so. Since then, the Court has held two in-court hearings

on these motions and recommends that the Court grant both motions as discussed below.

**I.** **PLAINTIFFS' MOTION FOR SUPPLEMENTAL ATTORNEYS' FEES, DOC. NO. 213**

On November 15, 2013, this Court entered a final judgment in this action against

Defendants. Since then, Plaintiffs have been forced into protracted proceedings supplemental to

collect the judgment that Defendants still have not paid. In the mean time, Defendants have

attempted unsuccessfully to get the judgment reversed.

First, Defendants appealed the judgment to the Seventh Circuit. The appeal was dismisssed voluntarily on January 29, 2014. Doc. No. 160. Second, Defendant, Nick Kladis, sought Chapter 13 bankruptcy protection. His petition was dismissed on April 16, 2014. Doc. No. 213-1 at 9. Third, Defendants filed two motions to set aside the judgment that this Court denied on October 10, 2014. Doc. No. 200. Defendants' legal efforts have delayed the proceedings supplemental in this case more than once. Consequently, Defendants have been able to avoid the judgment while forcing Plaintiffs to incur post-judgment expenses, including attorneys' fees, totaling $93,283.34 in order to protect their interests. *See* Doc. Nos. 213-8 (Appeals Billing through February 26, 2014) & 213-9 (Post-Judgment Billing from February 26, 2014, through March 3, 2015).

As a result, Plaintiffs filed the instant motion for supplemental attorneys' fees on March 5, 2015. Doc. No. 213. An adverse party shall have fourteen days after service of a motion in which to serve and file a response. N.D. Ind. L.R. 7-1(d)(2)(A). Failure to file a response within the time prescribed may subject the motion to summary ruling. N.D. Ind. L.R. 7-1(d)(4). As of this date, Defendants have neither responded to Plaintiffs' motion nor provided any explanation for their inaction.

Nevertheless, the undersigned afforded Defendants two additional opportunities to be heard on this motion at hearings held on August 13, 2015, and August 27, 2015. Defendants still did not object. Because Plaintiffs have demonstrated good cause and Defendants have not objected, the undersigned **RECOMMENDS** that this Court **GRANT** Plaintiffs' motion. [Doc. No. 213]. In addition, the undersigned **RECOMMENDS** that this Court award Plaintiffs

$93,283.34 in post-judgment costs as documented in Plaintiffs' billing statements [Doc. Nos. 213-8 & 213-9].

**II.     PLAINTIFFS' VERIFIED MOTION FOR CONTEMPT, DOC. NO. 223**

**A.     Relevant Background**

As part of the ongoing proceedings supplemental in this case, Zoi Kladis and Nick Kladis testified under oath before the undersigned on April 13, 2015.  While testifying under oath on that day, Zoi Kladis, co-owner of Z & K Pancake House with Nick Kladis, stipulated that Nick Kladis agreed to have his salary from Z & K Pancake House—approximately $300 per pay period (two weeks) after payroll taxes—turned over to Plaintiff's counsel each pay period. During his own testimony on that day, Nick Kladis stipulated his agreement to turn over $367 net monthly income from a South Bend rental property to Plaintiff's counsel each month.  Based on those stipulations, Plaintiffs filed a motion on April 13, 2015, asking the Court to issue a turnover order requiring Z & K Pancake House and Nick Kladis to make monthly payments toward satisfaction of the judgment.

After 24 days passed with no objection from Z & K Pancake House or Nick Kladis, the undersigned issued the uncontested turnover order on May 7, 2015, stating:

> IT IS THEREFORE ORDERED ADJUDGED and DECREED that Z & K Pancake House shall turnover to Roberts & Bishop Nick Kladis' salary continuing until the judgment has been paid off.
>
> IT IS FURTHER ORDERED that Nick Kladis shall turn over $367 per month attributable to profit from his rental property to Roberts & Bishop.

Doc. No. 220 at 1.  Neither Nick Kladis nor Zoi Kladis, on behalf of Z & K Pancake House, complied with the turnover order.  Therefore, on May 18, 2015, at Plaintiffs' request, the undersigned ordered Nick Kladis and Zoi Kladis to show cause within 14 days why they had not

complied with the turnover over.  Doc. No. 222 at 1.  In that order, the undersigned advised that "[f]ailure to respond or adequately explain their actions may result in sanctions."  *Id.*

After 43 days with no response from Nick or Zoi Kladis and no payment to Plaintiffs' counsel, Plaintiffs filed the instant verified motion for contempt on June 30, 2015.  Doc. No. 223.  In their motion, Plaintiffs asked the Court to "issue a body attachment, with a cash bond on [sic] $25,000 for Defendant Kladis and $10,000 for Zoi Kladis."  *Id.* at 2.  In addition, Plaintiffs asked the Court to order Nick Kladis and Zoi Kladis "to pay legal fees due as a result of [Plaintiffs'] Counsel's attempts to receive payments in the amount of $5,325.45, to be split equally among them."  *Id.*  Once again, the response period established in the Local Rules passed without any response from Nick or Zoi Kladis.

Notably, Defendants had been proceeding unrepresented in this action since February 10, 2015.  On July 21, 2015, Defendants' new counsel entered his appearance and also filed a motion for an extension to respond to the motion for contempt.  On July 29, 2015, the undersigned scheduled a motion hearing for August 13, 2015.  At the hearing, the Court granted Defendants an additional seven days to respond to Plaintiffs' instant motion for contempt.

The Court also heard from the parties on that day.  As pertinent here, Defendants' counsel stated that Nick Kladis had told him that he had prepared a check in the amount of $967—one month's obligation under the turnover order—for Plaintiffs.  Defendants' counsel, however, had not seen the check and Nick Kladis had not brought it to the hearing.  Before ending the hearing, the undersigned directed the parties to meet and confer to see if any agreement could be reached on Nick Kladis's and Zoi Kladis's obligations under the turnover

order. The undersigned also scheduled another hearing for August 27, 2015, before which the

briefing on the motion for contempt would be complete.

As directed, Plaintiffs' counsel, Defendants' counsel, Nick Kladis, and Zoi Kladis met

and conferred on August 13, 2015, in the courtroom immediately following the hearing. In her

affidavit, Tasha R. Roberts, one of Plaintiffs' attorneys, described the conversation during the

parties' meeting that day as follows:

> Nick Kladis admitted to me, Mr. Roberts [Plaintiffs' co-counsel] and before his
> own Counsel, Nick Otis, that he was intentionally not paying the Judgment, and
> we should collect it from the malpractice carrier.[1] After Mr. Otis instructed his
> client to stop talking and as Mr. Otis and his clients were leaving the Courtroom,
> both Zoi Kladis and Nick Kladis again stated that they had no intention to pay the
> Judgment. They said "we better get it from the insurance company if we want to
> get paid."

Doc. No. 232-1 at 1–2. Defendants then timely filed their response brief on August 20, 2015. In

their brief, Defendants argued that Nick Kladis should not be held in contempt for failing to

comply with the turnover order because he is not able to pay the monthly salary amount because

he is not receiving any salary from Z & K Pancake House. On August, 26, 2015, Plaintiffs filed

their reply along with three affidavits and a letter dated August 14, 2015, from Plaintiffs' counsel

to Defendants' counsel, which confirms information conveyed at the meet and confer meeting.

In their brief, Plaintiffs reiterated their request that this Court jail Nick and Zoi Kladis for

contempt with cash bonds of $25,000 and $10,000 respectfully.

On August 27, 2015, the parties returned to court where the undersigned heard testimony

from Nick Kladis. Plaintiffs' counsel asked Kladis about the $967 check and why they had not

---

[1]Defendants are pursuing a malpractice claim in state court against their former counsel in this matter. Nick Kladis is optimistic that he will win on that claim and that his judgment in that action, presumably to be paid by the attorney's malpractice insurance carrier, will cover Defendants' obligations under the Judgment in this action.

yet received it.  Kladis explained that the check had originally been made out to his counsel, not

Plaintiffs' counsel as required by the turnover order.  Defendants' counsel had the mis-directed

check in court.  Kladis stated that his counsel had informed him of the mistake by August 13,

2015, but that issues raised by his accountant regarding taxes had prevented him from getting a

new check drafted and delivered to Plaintiff's counsel.  Kladis also testified that he had no

money or checks to pay Plaintiffs' counsel right there and then, but intended to get the $967

check to Plaintiffs' counsel.

In response to Plaintiffs' counsel's questions about his salary, Kladis testified that he was

not receiving any salary from Z & K Pancake House but that he was receiving $3,500 per month

from Nick's American Pancake & Café, the restaurant he owns solely.  Kladis's testimony

revealed nothing more specific about his failure to pay Plaintiffs' counsel the $367 in monthly

rental profits since the turnover order was issued.  Confronted with Ms. Roberts's affidavit

averring that he and Zoi had explicitly refused to pay the Judgment during the meet and confer

meeting on August 13, 2015, Nick Kladis testified only that he recalled discussing the

malpractice suit that day with Plaintiffs' counsel even when given a second chance to respond.

Nick Kladis did not deny making the statement.

### B.  Analysis

Civil contempt seeks only to coerce the defendant to comply with what a court has

previously ordered him to do.  *See Turner v. Rogers*, 131 S. Ct. 2507, 2516 (2011); *Nye v. United

States*, 313 U.S. 33, 41–43 (1941).  Criminal contempt, on the other hand, is used to "punish the

contemnor, vindicate the court's authority, or deter future misconduct."  *Thomas v. City of

Chicago*, No. 99 C 4689, 2000 U.S. Dist. LEXIS 688, *15 (N.D. Ill. Jan. 20, 2000) (citing *United

*States v. Lippitt*, 180 F.3d 873, 876-77 (7th Cir. 1999)).  The power to hold individuals in

contempt is inherent in all courts.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Shillitani*

*v. United States*, 384 U.S. 364, 370 (1966); *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir.

2001).

To hold a party in civil contempt, the court must be able to provide a decree from the

court that sets forth with specific detail an unequivocal command, which the party in contempt

has violated.  *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999).  The movant in a

civil contempt proceeding must demonstrate by "clear and convincing evidence" that the court's

order has been violated.  *Bailey v. Roob*, 567 F.3d 930, 934 (7th Cir. 2009).  A finding of

criminal contempt requires more exacting proof.  Under 18 U.S.C. § 401, the movant must

establish obstruction of justice or willful violation of a court's order beyond a reasonable doubt.

*Thomas*, 2000 U.S. Dist. LEXIS 688 at *15–16.

Here, the Court finds no reason to even consider finding the Kladises in criminal

contempt.  Plaintiffs' interest is simply in seeing this Court's turnover order obeyed.  Plaintiffs

specifically suggest that payment of the requested bond amounts would purge any body

attachment this Court may order.  Doc. No. 223 at 2, ¶ 5.  Therefore, the undersigned will only

consider whether civil contempt is an appropriate sanction against Nick and Zoi Kladis.

To support a finding of civil contempt, Plaintiffs need only establish that the Kladises

violated the turnover order by clear and convincing evidence.  *See Bailey*, 567 F.3d at 934.

Plaintiffs have, without question, succeeded.  Nick and Zoi Kladis agree that they have paid

Plaintiffs' counsel nothing since the turnover order was issued on May 7, 2015.  The Kladises

have gone further and have agreed that they stipulated their willingness to pay the salary and rental profits before the turnover order was issued.

Nick and Zoi Kladis have, however, failed to show any inability to pay. "Inability to comply with a judgment is a defense to contempt." *E.E.O.C. v. Paragon Rest., Inc.*, No. 95 C 667, 1999 WL 231678, at \*7 (N.D. Ill. Mar. 26, 1999) (citing *Hodgson v. Hotard*, 436 F.2d 1110, 1115 (5th Cir. 1971)). When asserting the defense of inability to pay, "[d]efendants have the burden of proof to show inability to pay by clear and convincing evidence." *Id.* (citing *Sec. & Exch. Comm'n v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993)).

Defendants raise the defense of inability to pay, but have established by clear and convincing evidence quite the contrary. The record shows that the Kladises have the ability to comply with the turnover order, and likely can even pay more toward the Judgment.

First, both Zoi and Nick Kladis stipulated under oath in April 2015 that they would make monthly payments to Plaintiffs' counsel of Nick's Z & K Pancake House salary and his rental property profits. In other words, they stated that they were willing to pay Plaintiffs' counsel $967 per month toward the Judgment. Based on that stipulation, the undersigned formalized the agreement by issuing the turnover order requiring the Kladises to uphold their promise to pay Plaintiffs' counsel.

Second, the record before the Court now, including Nick Kladis's testimony about his willingness to re-write the $967 check that was mis-directed to Defendants' counsel as well as his current salary income of $3,500 per month from Nick's American Pancake & Café, contradicts his contention that he cannot afford payments of $967 per month to Plaintiff's counsel even if he is not receiving any salary from Z & K Pancake House. Notably, the Kladises

8

did not clarify when Nick Kladis's salary ended making it unclear whether it actually did. As a result, the Kladises have convinced the undersigned that he has the present ability to make the payments required under the turnover order and that he can likely pay Plaintiffs' counsel more than is required under the order.

Third, Nick Kladis and Zoi Kladis have demonstrated that they not only have willfully disobeyed the turnover order but more troubling that they have no intention to comply with this Court's lawful order going forward. Most compelling and concerning is Attorney Robert's uncontroverted statement that both Zoi and Nick Kladis, following the in-court hearing on August 13, 2015, unequivocally stated that they have no intention of paying the judgment, [Doc. No. 232-1 at 1-2]. The essence of civil contempt is the ability to comply with a lawful order but an unwillingness to do so. Plaintiffs' counsel have clearly established that Zoi and Nick Kladis have the ability to comply with the Court's order and are deliberately refusing to do so. This is contempt.

While Plaintiff's counsel have demonstrated that Zoi and Nick Kladis are in contempt of this Court in this specific matter, a brief review of the entire history of this case shows that they have attempted to evade the legal consequences of their actions since judgment was entered. Following the jury's verdict, this Court entered judgment on November 15, 2013. The Defendants, through a variety of tactics, have delayed, stalled, and refused to pay the judgment of this Court. It is one thing to aggressively litigate contested matters but it is another thing to deliberate refuse to honor the judgment and orders of this Court. Nick and Zoi Kladis have now crossed the line from litigating honest disputes to contempt of court for the willful refusal to obey lawful orders. In light of the Defendants' conduct, the Court is left few options to force the

9

Defendants' into compliance. Civil contempt, in which the Defendants' would possess "the keys to their jail cell," is one such option. The undersigned is convinced that holding the Kladises in contempt is necessary to enforce the turnover order, force them into compliance and to deter them from future disobedience of this Court's orders.

### C.    Conclusion

Given (1) Nick Kladis's and Zoi Kladis's clear and convincing violation of the turnover order, (2) Nick Kladis's ability to pay the $967 per month required by the turnover order if not more, and (3) the Kladises' clear intent to avoid any payment toward the Judgment until the state court malpractice action is complete, the undersigned is left with no other option but contempt to enforce this Court's orders.   Therefore, the undersigned **RECOMMENDS** that this Court **GRANT** Plaintiffs' verified motion for contempt. [Doc. No. 223].  The undersigned **RECOMMENDS** that this Court issue a body attachment order with a cash bond of $25,000 on Defendant, Nick Kladis, and $10,000 on Judgment Creditor, Zoi Kladis on behalf of Z & K Pancake House.  Lastly, the undersigned **RECOMMENDS** that Nick Kladis and Zoe Kladis be ordered to pay all Plaintiffs' cost, including attorneys' fees and expenses, incurred in enforcing the turnover order.

### III.    CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that this Court

(1)    **GRANT** Plaintiffs' motion for supplemental attorney fees. [Doc. No. 213].  In addition, the undersigned **RECOMMENDS** that this Court award Plaintiffs $93,283.34 in post-judgment costs as documented in Plaintiffs' billing statements [Doc. Nos. 213-8 & 213-9].

(2)    **GRANT** Plaintiffs' verified motion for contempt. [Doc. No. 223].  The undersigned **RECOMMENDS** that this Court issue a body attachment order with a cash bond of $25,000 on Defendant, Nick Kladis, and $10,000 on Judgment Creditor, Zoi Kladis on behalf of Z & K Pancake House.  Lastly, the undersigned **RECOMMENDS** that Nick

10

Kladis and Zoe Kladis be ordered to pay all Plaintiffs' cost, including attorneys' fees and expenses, incurred in enforcing the turnover order.

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED.**

Dated this 31st day of August, 2015.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge